The ILND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(See instructions on next page of this form.)*

**I. (a) PLAINTIFFS**

Our Lady's Center for Rehabilitation and Healthcare, LLC

**(b)** County of Residence of First Listed Plaintiff Atlantic County
*(Except in U.S. plaintiff cases)*

**(c)** Attorneys *(firm name, address, and telephone number)*

Talia Mazza, sb2, inc. 1426 N. 3rd Street, Suite 120, ⊞

**DEFENDANTS**

Mehmet Oz, in his official capacity as the Administra ⊞

County of Residence of First Listed Defendant
*(In U.S. plaintiff cases only)*
Note: In land condemnation cases, use the location of the tract of land involved.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Check **one** box, only.)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government not a party.)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate citizenship of parties in Item III.)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(For Diversity Cases Only.)*
*(Check **one** box, only for plaintiff and **one** box for defendant.)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Check **one** box, only.)*

| CONTRACT | TORTS | | PRISONER PETITIONS | LABOR | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 510 Motions to Vacate Sentence | ☐ 710 Fair Labor Standards Act | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 530 General | ☐ 720 Labor/Management Relations | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act | ☐ 400 State Reapportionment |
| | ☐ 320 Assault, Libel & Slander | | **Other:** | | ☐ 410 Antitrust |
| | ☐ 330 Federal Employers' Liability | | ☐ 540 Mandamus & Other | ☐ 751 Family and Medical Leave Act | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 345 Marine Product Liability | | ☐ 555 Prison Condition | ☐ 791 Employee Retirement Income Security Act | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | | ☐ 560 Civil Detainee - Conditions of Confinement | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excludes Veterans) | ☐ 355 Motor Vehicle Product Liability | **PERSONAL PROPERTY** | | | ☐ 480 Consumer Credit |
| | ☐ 360 Other Personal Injury | ☐ 370 Other Fraud | | **PROPERTY RIGHTS** | ☐ 485 Telephone Consumer |
| ☐ 153 Recovery of Veteran's Benefits | ☐ 362 Personal Injury - Medical Malpractice | ☐ 371 Truth in Lending | | ☐ 820 Copyright | Protection Act (TCPA) |
| ☐ 160 Stockholders' Suits | | ☐ 380 Other Personal Property Damage | | ☐ 830 Patent | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 840 Trademark | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) | ☐ 891 Agricultural Arts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **SOCIAL SECURITY** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 861 HIA (1395ff) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations | **IMMIGRATION** | | ☐ 864 SSID Title XVI | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/ Disabilities-Employment | ☐ 462 Naturalization Application | | ☐ 865 RSI (405(g)) | ☒ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 463 Habeas Corpus – Alien Detainee (Prisoner Petition) | | **FEDERAL TAXES** | |
| | ☐ 448 Education | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | | | ☐ 871 IRS—Third Party 26 USC 7609 | |

**V. ORIGIN** *(Check one box, only.)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District (specify)
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION** ( Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)
28 U.S.C. §§ 1331 and 1343(a)(3).

**VII. PREVIOUS BANKRUPTCY MATTERS** (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

**VIII. REQUESTED IN COMPLAINT:**
☐ Check if this is a **class action** under Rule 23, F.R.CV.P.
Demand $
CHECK Yes only if demanded in complaint:
Jury Demand: ☒ Yes ☐ No

**IX. RELATED CASE(S) IF ANY** *(See instructions):*
Judge _____ Case Number _____

**X. Is this a previously dismissed or remanded case?** ☐ Yes ☒ No If yes, Case # _____ Name of Judge _____

Date: 4/21/26 _____

Signature of Attorney of Record /s/ Talia Mazza _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

OUR LADY'S CENTER )
FOR REHABILITATION AND )
HEALTHCARE, LLC )
  )
         **Plaintiff,** )
  )
v. )I
  )
  )
  )
MEHMET OZ, )
in his official capacity as )
the Administrator for the Centers for )
Medicaid and Medicare Services )
  )
         **Defendant.** )

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

COMES NOW Plaintiff, OUR LADY'S CENTER FOR REHABILITATION AND HEALTHCARE, LLC (hereinafter "Our Lady's Center" and or "Plaintiff") and brings this action to address errors made by the Centers for Medicare and Medicaid Services (hereinafter "CMS") in assessing alleged deficiencies for payroll-based journal assessments at Plaintiff's skilled nursing care facility; these errors were factored into the CMS Five Star Quality Rating System for nursing homes without a fair, impartial hearing in violation of due process. These errors will cost Plaintiff $450,000 in 2026, and, if not corrected will continue to impair their position in the competitive market, further reduce their Medicaid reimbursement rates, and destroy the reputational integrity of the facility in the community.

The Five Star Quality Rating is used not only by consumers to choose which facility to place their loved one, but also by CMS to determine, among other things, quality incentive

payments, reimbursement rates, and fees for services for residents not covered by managed care organizations.  It also impacts contracting rates with managed care organizations.

While Plaintiff is entitled to a hearing regarding the alleged deficiencies under federal and state laws prior to imposition of penalties, here Defendant has denied Plaintiff the opportunity to contest the payroll-based journal assessment (hereinafter "PBJ Audit") at a fair and impartial evidentiary hearing. Furthermore, CMS has violated the Administrative Procedure Act (hereinafter "APA") in pursuing this audit, as it falls outside of the survey enforcement authority granted to them.

Plaintiff seeks to require Defendant, Mehmet Oz, in his official capacity as Administrator for CMS to comply with CMS Medicare and Medicaid regulations to conduct an impartial hearing and forego imposition of penalties unless and until due process is served in compliance with the Federal rules and regulations. By failing to afford Plaintiff the opportunity to refute the alleged PBJ inaccuracies, and then penalizing Plaintiff, the Defendant has deprived Plaintiff of due process rights under the Fourteenth Amendment to the United States Constitution.

## I.  JURISDICTION AND VENUE

This action arises under the Federal Medicaid Act and its implementing regulations. Jurisdiction of this court is invoked to secure protection to redress the deprivation under color of state law, statute, custom and/or usage of a right, privilege and/or immunity guaranteed to Plaintiff by the United States Constitution and by 42 U.S.C. § 1983 and other Acts of Congress and is proper under 28 U.S.C. §§ 1331 and 1343(a)(3).

Venue lies in this forum pursuant to 28 U.S.C. § 1391(e) due to the fact that the Plaintiff resides in the district this forum serves.

## II.  PARTIES AND RELEVANT AGENCIES

1. OUR LADY'S CENTER FOR REHABILITATION AND HEALTHCARE, LLC is a skilled nursing facility located at 1100 Clematis Ave, Pleasantville, NJ 08232

2. Defendant, Mehmet Oz, is the Administrator of the Centers for Medicare and Medicaid Services, and at all times material to this Complaint acted under color of federal law in administering the regulations, customs, policies, and practices material herein. Defendant is sued in his official capacity only.

3. CMS is the agency within the Department of Health and Human Services that is responsible for the Medicare and Medicaid programs.

## III.  STATEMENT OF FACTS

4. Medicaid is a federal and state program that helps cover the cost of medical care for certain low-income people, including those with disabilities. CMS oversees state agencies, like the Division of Medical Assistance and Health Services ("DMAHS"), in administering their Medicaid programs to ensure compliance with federal guidelines.

5. Plaintiff is a participating provider in the Medicaid program.

6. CMS contracts with state agencies to conduct compliance surveys, or audits, of participating skilled nursing facilities to determine compliance by providers of services with conditions of participation in the Medicaid programs. 42 U.S.C. § 1395aa.

7. Additionally, skilled nursing facilities must submit quality measurement data when requested by CMS. 42 C. F. R § 413.360.

8. With standard audits, state agency surveyors, or CMS and their contracted surveyors, record violations, known as "deficiencies," and rate them according to scope and severity. 42 C.F.R. § 488.408.  The deficiencies are then referred to CMS for enforcement actions.

9. Enforcement actions may include program disqualification, temporary management, denial of reimbursement payments, state monitoring, transfer of residents, closure of the facility, directed plans of correction and training, and civil money penalties. *Id.*

10. Additionally, 42 CFR § 488.331 requires that CMS and the State, as appropriate, offer skilled nursing facilities, nursing facilities, and dually participating facilities an informal opportunity to dispute cited deficiencies upon the facility's receipt of the Statement of Deficiencies and Plan of Correction, Form CMS-2567.

11. The state is required to make an appeal procedure available "to a Nursing Facility (NF) that is dissatisfied with a State's finding of noncompliance that has resulted in one of the following adverse actions: (i) Denial or termination of its provider agreement. (ii) Imposition of a civil money penalty or other alternative remedy." 42 C.F.R. § 431.151.

12. To comply with the Due Process guarantees under the United States Constitution, the Defendant must provide Plaintiff with a meaningful notice that apprises them of the opportunity to appeal and the right to a hearing prior to the deprivation of their protected interest. *See Goldberg v. Kelly*, 397 U.S. 254 (1970); 42 C.F.R.. § 431.153.

13. As part of the Nursing Home Reform Act ("NHRA"), Congress established the Nursing Home Compare website. 42 U.S.C. § 1395i-3(i); 42 U.S.C. § 1396r(i). It did so as an informational tool for consumers to compare nursing homes.

14. Under NHRA Nursing Home Compare, CMS established a Five-Star Quality Rating System that periodically calculates and assigns each skilled nursing facility a rating for performance on specified domains (including various quality measures, staffing and survey performance) and an "overall" rating. Star ratings range from a low of "1" to a high of "5" for each of its domains and the overall rating.

15. The deficiencies, as well as the star ratings, are reflected on the Nursing Home Compare CMS website at www.medicare.gov/nursinghomecompare.

16. Section 6106 of the Affordable Care Act, enacted on March 23, 2010, included specific provisions pertaining to the required collection of auditable, daily staffing data for long term care facilities via CMS-671 Form.

17. In 2015, CMS implemented a system for the facilities to collect and submit the staffing information; this system was called the Payroll-Based Journal (PBJ), and its aim is to "improve the accuracy of the public reporting and provide greater insight into how facility staffing relates to quality and outcomes." Center for Clinical Standards and Quality/Survey & Certification Group Memorandum, QSO-18-17, CMS, https://www.cms.gov/medicare/health-safety-standards/quality-safety-oversight-general-information/policy-memos/policy-memos-states-cms-locations (last viewed April 15, 2026). It was created to replace the data submitted on the CMS-671 Form.

18. The data must be submitted quarterly via the PBJ online portal that allows manual data entry or a file upload from an automated payroll or time and attendance system. CMS Electronic Staffing Data Submission Payroll-Based Journal Long-Term Care Facility Policy Manual, Sect. 1.4.

19. While the collection and submission of the data is presumably authorized under the Affordable Care Act, the guidance implementing the PBJ audit process is not articulated therein. Specifically, the publishing of the change in the facility's five-star rating calculation before the facility has had a chance to appeal any decrease in its five-star rating is not ever mentioned, discussed, or specifically allowed under the Affordable Care Act.

20. The facilities are randomly selected for an audit of their PBJ data to verify that the staffing hours submitted by facilities coincide with the hours staff were paid to work over the same timeframe.

21. CMS performs these PBJ audits by hiring third-party contractors, including Myers and Stauffer.

22. A handful of events can result in a failed PBJ audit, including when there are "significant inaccuracies" between the hours that were reported in PBJ and the hours that were verifiable to a payroll, and failure by a facility to submit the data by the deadline or failure to respond to an audit request or to submit all required documentation.  Upon completion of an audit, facilities are notified of the findings and given an opportunity to correct discrepancies. Transition to Payroll-Based Journal Staffing Measures on the Nursing Home Compare tool on Medicare.gov and the Five Star Quality Rating System, QSO-18-17-NH, CENTERS FOR MEDICARE & MEDICAID SERVICES, https://cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Downloads/QSO18-17-NH.pdf (last accessed January 27, 2026).

23. Significant discrepancies between hours reported and hours verified are presumed to signify low levels of staff, and consequently, the facility receives a one-star staffing rating. Facilities which do not submit complete PBJ data by the submission deadline, or do not respond to or provide sufficient information during an audit request, will be assigned a one-star staffing rating for the quarter. *See again*  QSO-18-17-NH.

24. In July 2022, CMS approved an amendment to the New Jersey State Plan to adjust the reimbursement methodology for nursing facilities to align with the Medicare Patient Driven Payment Model (PDPM), incentivize staffing levels with variable rates, and include a $70

million annual quality incentive payment directly tied to Long Stay Star ratings. *See* State Plan Amendment (SPA) 22-0015.

25. Critically, that CMS-approved State Plan Amendment did not provide any appeals process as it relates to the financial benefits tied to the Five Star Rating.

26. On October 2, 2024, CMS sent a letter to Our Lady's Center, alleging that the PBJ staffing hours submitted showed a significant variance in their Hours per Resident Day (HRD) in the quarter ending June 30, 2024.

27. The letter stated that if the requested data delivered in seven days' time did not support the accuracy of the data originally submitted by the Plaintiff, the facility would receive a one-star staffing rating in the Five-Star Quality Rating System, affecting the facility's overall composite rating by one star for three months.

28. The original audit was conducted by contractor Myers & Stauffer.  Plaintiff submitted the data to Myers & Stauffer and followed prescribed appeal procedures.

29. Myers & Stauffer conducted the internal appeal and made the decision to uphold its own initial decision.  The facility was penalized with a one star staffing rating, bringing their overall Five-Star Rating to one star.

30. When Plaintiff attempted to appeal that internal appeal decision,  Myers & Stauffer informed Plaintiff that no other appeals were available and referred the nursing facility to CMS for further issues.

31. The downgraded Five-Star Rating was immediately published on the CMS website, www.medicare.gov/nursinghomecompare.

32. Because of the downgraded Star Rating, Our Lady's Center will lose $9 per Medicaid patient per day as of July 2026, which totals approximately $450,000 annually.

33. Plaintiff has a property interest in the compensation that it receives for the services that it performs, as well as the incentive payments based on the Star Rating.

34. As above, that compensation is directly affected by the results of the above-described audits, as is the reputational interest of the facility.

35. Per *Goldberg v. Kelly*, 397 U.S. at 264-266, to comply with the Due Process guarantees under the United States Constitution, Defendant must provide Plaintiff with a meaningful notice that apprises of their right to appeal. With the PBJ audit, a nursing facility's Star Quality Rating is lowered immediately upon an audit determination. The facility's compensation is irreversibly reduced before any appeal hearing is held. Accordingly, the PBJ audit offers no meaningful appeal rights

36. Under traditional nursing facilities audits, initial determinations are subject to appeal. 42 C.F.R. § 498.3(b). If a provider appeals a deficiency alleged in a survey, the deficiency must either be dismissed or reviewed. *Plott Nursing Home v. Burwell*, 779 F.3d 975 (9th Cir. 2015).

37. The regulations provide for a hearing where certain penalties, such as civil monetary penalties or termination of a provider agreement, are imposed. 42 U.S.C. § 1395i–3(h)(2)(B)(ii); 42 C.F.R.§ 431.153; 42 C.F.R. § 498.5.

38. Additionally, the posting of deficiencies must be in accordance with statute. 42 U.S.C. § 1395–3(b)(5)(E). CMS guidelines specify that the results of a survey should not be uploaded prior to resolution of the informal dispute resolution process.

39. However, PBJ audits are not processed under the traditional rules that CMS has previously approved.

40. For PBJ audits, the third-party contractors are hired to conduct the audits, as well as the internal appeal, and then they send their decision to CMS and notify the facility of their decision.

41. Facilities are not provided with an opportunity of a fair hearing or independent review of the third-party contractors' audit results before the downgraded Five-Star Quality Rating is published.

42. The immediate downgrade of the staffing star rating, its impact on the overall Five-Star Quality Rating, and the immediate publication of the star rating has profound detrimental effects on Plaintiff's businesses.

43. Specifically, Plaintiff will lose at least $450,000 annually due to the downgraded star rating. And generally, low star ratings limit participation in Federal Programs and can preclude participation in Insurance Service Networks, Accountable Care Organizations, and Preferred Provider Networks.

44. Low star ratings affect terms and conditions provided by lenders, including the U.S. Department of Housing and Urban Development.

45. Defendant is adjusting the CMS Five-Star Quality Rating calculations without first providing an evidentiary hearing, in violation of Constitutional due process, and federal and state laws and regulations.

## IV. CAUSES OF ACTION

### COUNT ONE - VIOLATIONS OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

46. Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

47. Defendant is acting independently in conducting these PBJ audits. The audits do not provide the same due process protections required of the usual audits although the consequence for identified deficiencies is the same, which is the immediate recalculation and publication of the Plaintiff's 5-Star Quality Rating.

48. The Plaintiff Facility experiences devastating fiscal impact from the unreviewed reduction of its Five-Star Rating.

49. Additionally, the low star rating causes reputational damage to Plaintiff as consumers looking for a skilled nursing facility view the facility as less desirable and avoid admission to the facility.   The immediate downgrade and posting of the 5-Star Rating create an irrebuttable presumption that the facility is understaffed and providing below-average service, when, in fact, other factors could have contributed to the audit results, like input errors.  This is a direct, but non-quantifiable loss to the facility.

50. . Defendant's policies and procedures of the PBJ Audits are inconsistent with the Due Process Clause of the United States Constitution, Amendment XIV, and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, et seq., and its implementing regulations.

51. Defendant acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of its rights and privileges and did not provide sufficient procedural protections surrounding the deprivation of the protected interest.

52. Plaintiff therefore respectfully requests the relief as prayed for below.

## <u>COUNT TWO – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT</u>
### Agency Action Not in Accordance with Law

53. Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

54. The APA, 5 U.S.C. §§ 551-559 and 701-706, provide for judicial review to "[a]person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . ." 5 U.S.C. § 702. Under 5 U.S.C. § 706(2)(A), an agency action can be held unlawful and set aside if it is "not in accordance with law."

55. CMS is responsible for administering the Medicaid program, including the PBJ Audit Program and the Five-Star Quality Rating System.

56.  Under 42 C.F.R.. § 431.153, skilled nursing facilities must be afforded with appeal rights with a fair hearing following allegation of survey, or audit, deficiencies.

57. The impact of QSO-18-17-NH on the Plaintiff is economically devastating.  By virtue of the adverse audit findings made by Myers & Staufer which automatically reduced the Plaintiff's Five-Star Quality Rating, Plaintiff will lose at least $450,000 in reimbursement payments in 2026. Beyond that, its reputation for providing quality skilled nursing care is being irreparably harmed.

58. The continued viability of Plaintiff and similarly situated skilled nursing facilities and their ability to provide care for their residents is seriously threatened.

59. CMS's survey and enforcement policies for the PBJ Audit Program deprives Plaintiff of due process because Plaintiff is not afforded the opportunity to appeal the PBJ audit result prior to the downgrade and subsequent publication of the Five-Star Rating, thus making any appeal process moot; the financial and reputational harm has already occurred as described above.

60. Accordingly, CMS has acted contrary to law and failed to follow the regulations, specifically 42 C.F.R.. § 431.153.

61. Plaintiff therefore respectfully requests the relief as prayed for below.

## <u>COUNT THREE – DECLARATORY JUDGMENT</u>

62. Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

63. Defendant's PBJ Audit procedure, with the subsequent recalculation and publication of a facility's Five-Star Quality Rating, is a final agency action that is reviewable under 5 U.S.C. § 706(2).

64. An actual controversy exists between Plaintiff and the Defendant regarding the calculation and publication of the Facility's Five-Star Quality Rating adjustment following a PBJ audit wherein Plaintiff was not given an administrative appeal and fair hearing to dispute the alleged staffing deficiencies.

65. Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff seeks declaratory relief by this Court. A declaratory judgement will serve a useful purpose and resolve the controversy between the parties. *Green v. Mansour*, 474 U.S. 64, 74 (1985).

## V. REQUESTS FOR RELIEF

Plaintiffs respectfully request that this Court issue an order:

1. Enter judgement against Defendant and in favor of Plaintiff for each count alleged in this Complaint;

2. Declare that by forgoing the traditional survey enforcement pursuant to 42 C.F.R.§ 431.153 and 42 C.F.R. § 498.5, and failing to provide the Plaintiff with appeal rights including a fair hearing following a PBJ Audit, the Defendant acted contrary to law, and order Defendant to provide a fair hearing prior to the use of the audit deficiencies for the calculation and publication of the Five Star Quality Rating;

3. Order that CMS keep the results of its PBJ Audit surveys internal with no publication of audit deficiencies for the calculation and publication of the Five Star Quality Rating until participating providers have exhausted their appeal remedies;

4. Void the violation notices issued by Defendant to Plaintiff under PBJ Audits system; and

5. Any other equitable relief that this court determines just.

Respectfully submitted,

 _/s/ Talia Mazza_
Talia Mazza, Esq.
Attorney ID: 200842016
sb2, inc.
1426 N. 3rd Street, Suite 120
P.O. Box 5400
Harrisburg, PA 17110
T: 215-360-7889
F: 717-909-5925
tmazza@sb2inc.com